**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CECILY RIDGEWAY** | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| | : | NO. 20- |
| v. | | |
| | : | |
| **CHESTER CHARTER COMMUNITY SCHOOL** | | |
| **and** | : | |
| | : | |
| **CSMI, Inc.,** | : | |
| **and** | : | |
| **Janell Trigg, Assistant Human Resources Administrator for CSMI, Inc.** | : | |
| | : | |
| Defendants | : | |

**COMPLAINT**

## I. PRELIMINARY STATEMENT

This is an action for defamation by Plaintiff Cecily Ridgeway against her former employer, the Chester Community Charter School (CCCS) and its third-party Human Resources Administrators, CSMI, Inc. (collectively "the School Defendants"), and Janell Trigg, Assistant Human Resources Administrator for CSMI. In connection with Ms. Ridgeway's application for employment at the New Jersey school district (hereafter "the NJ District"), where she currently works, the School Defendants made knowingly false statements on a sworn child abuse disclosure statement indicating that she had been subject of an investigation for child abuse and/or sexual misconduct and that she had been disciplined, discharged, or otherwise separated

education that involves contact with students, Ms. Ridgeway will be required to authorize Defendants to provide a child abuse disclosure, leaving her vulnerable to the irreparable harm to her reputation as both a person and an educator that would ensue if they provide a false disclosure as they did to the NJ District.

## II. JURISDICTION AND VENUE

2. Ms. Ridgeway is a citizen of New Jersey and the School Defendants are citizens of Pennsylvania. Upon information and belief, Defendant Trigg is also a citizen of Pennsylvania.

3. The Court has diversity jurisdiction under 28 U.S.C. Sec. 1332 because the matter in controversy is between citizens of different States and exceeds the sum or value of $75,000, exclusive of interest and costs.

4. Venue lies in this court pursuant to 42 U.S.C. §12117(a) because all of the events that give rise to this Action took place in this district.

## III. PARTIES

5. Plaintiff is Cecily Ridgeway, who is a citizen of the United States and resides at 387 Ives Avenue, Carneys Point, NJ 08069.

6. The Defendant Chester Community Charter School (CCCS) is a public school located in Chester, PA. Its principal place of business is at 302 E. 5th Street, Chester, PA 19103.

7. CCCS is managed by CSMI, LLC, an education management company with its principal place of business at 302 E. 5th Street, Chester, PA 19103. CSMI provides support for CCCS's human resource functions, including but not limited to creating policies, procedures, and handbooks, providing professional clearances, and processes for hiring, discipline, and

termination.

8. Janell Trigg is the Assistant Human Resources Administrator for CSMI, LLC and her place of business is 302 E. 5th Street, Chester, PA 19103.

## IV. FACTUAL STATEMENT

### A. Plaintiff's Employment at CCCS and Separation on May 22, 2028

9. Ms. Ridgeway began her first teaching job at CCCS on March 13, 2017.

10. Ms. Ridgeway has a Masters Degree in Education which she obtained in 2018. She holds a Pennsylvania Certificate to teach Pre-K-4th Grade and a Pre-K through 3rd Grade certificate in New Jersey.

11. Ms. Ridgeway was offered a contract to teach 2nd Grade at CCCS during the 2017-18 and 2018-19 school years and during the summer.

12. On April 20, 2019, Ms. Ridgeway was offered a new contract for the 2019-20 school year.

13. Late in the day on May 21, 2019, one of the students in Ms. Ridgeway's classroom reported to her that during a 2nd Grade field trip and picnic the week before, on May 16th, three of his male classmates coerced a female student to engage in sexual acts with them.

14. None of the teachers who were supervising the approximately 175 2nd Graders on the field trip saw the incident or had any knowledge that it occurred.

15. The Student also reported to Ms. Ridgeway on May 21st that the same children were involved a second incident in the classroom later in the afternoon on May 16th during or near the dismissal period. He said that the children were hiding under a desk that had been partially covered by a picnic blanket while the lights were dimmed for students who were

watching a movie.

16. During the time the Student said the incident occurred, Ms. Ridgeway was working individually with other students and monitoring dismissals using CCCS's cell phone app. She neither saw nor suspected that any such conduct was underway.

17. The Student said he had not reported the incident to Ms. Ridgeway on May 16th because his bus had been called. He deferred again because one of the male students warned him not to tell, but he finally decided to come forward because the female student told him she was afraid of one of the male students.15

18. Before she received the Student's report on May 21st, Ms. Ridgeway had no knowledge that there had ever been sexualized conduct by or between any of the students in her class, and she had no reason to be on her guard for a something like that to occur.

19. Immediately after she received the Student's report, Ms. Ridgeway contacted the Dean to request guidance on how she should proceed.

20. He asked her to contact the school Social Worker, which she did.

21. The Social Worker and the Dean took three of the children involved from the classroom and spoke with them. The fourth student was not in school that day.

22. Ms. Ridgeway stayed late on May 21st because she was expecting to meet with the Principal, Ms. Burch, and the mother of the female student, and also to prepare an incident report to document what the Student told her that day.

23. The Principal told her late in the afternoon that she had already spoken the with child's mother, and that Ms. Ridgeway should wait until the next day to discuss it further.

24. The Principal told Ms. Ridgeway that the two of them would be meeting with the parent and they would discuss the incident report then.

25. When Ms. Ridgeway reported for work on May 22nd, the Principal told her that a meeting was soon to take place between herself, a representative from CSMI's HR department, the parent, and David Clark, CEO. Ms. Ridgeway was not invited to participate in the meeting.

26. The Principal said that the parent was planning to take legal action against CCCS.

27. At approximately 10 a.m., after the administrators finished their meeting with the parent, Ms. Ridgeway was ordered to gather her personal belongings and to report to CSMI headquarters to meet with Ms. Burch and Janelle Trigg, who was the Assistant Human Resources Director for CSMI.

28. Ms. Ridgeway took her incident report to the meeting, but neither Trigg nor Burch would accept it.

29. The Principal told Ms. Ridgeway that based on her review of the classroom video for May 16th, supervision "could have been better."

30. Trigg and Burch advised Ms. Ridgeway that David Clark, CEO had concluded that she should be terminated for failure to adequately supervise her students, and that she would receive a letter in the mail to that effect.

31. CEO Clark had not spoken with Ms. Ridgeway and had not asked her to provide an incident report or any other information or documentation about what had been reported to her on May 21st or any of her actions on May 16th.

32. Neither CEO Clarke nor anyone else to Plaintiff's knowledge ever interviewed the student who reported the incidents to her on May 21st or the child who was involved but absent that day.

33. Trigg and Burch told Ms. Ridgeway that the decision to terminate her was based on her having left her classroom unattended, and that the parent of the female child was threatening to take legal action against CCCS.

34. Ms. Ridgeway denied that she had ever left the classroom or failed to attend to her students, and asked to see the videotape, which confirmed that she did neither of those things.

35. Trigg and Burch told Ms. Ridgeway that the termination would go forward and that CCCS would be filing an Educator Misconduct Complaint with the Pennsylvania Department of Education and that this could compromise her teaching credentials.

36. CEO David Clark issued a termination letter on May 22, 2019 stating that the school had "completed the investigation" and was therefore terminating her employment for "failure to adequately supervise students."

**B. Plaintiff's Job Search and Application to the NJ District**

37. In the summer of 2019, Ms. Ridgeway applied for approximately five teaching positions near her home southern in New Jersey.

38. In connection with each of her applications for employment, Ms. Ridgeway agreed to allow each school district to contact CCCS about her employment there and she and provided the appropriate telephone number.

39. Ms. Ridgeway received only one response to her applications, that being from the NJ District to which she applied on July 31, 2019, and where she is now employed.

40. As part of the pre-employment screening process, Ms. Ridgeway was required to complete the applicant portion of New Jersey's "Sexual Misconduct and Child Abuse Disclosure" Form (hereafter "Initial Disclosure").

41. The Initial Disclosure Form asks the applicant to respond to the following three questions:

a. Have you been the subject of any child abuse or sexual misconduct investigation by any employer, State licensing agency, law enforcement agency, or the Department of Children and Families (*unless the investigation resulted in a finding that the allegations were false or unsubstantiated)?

b. Have you been disciplined, discharged, non-renewed, asked to resign from employment, resigned or otherwise separated from employment while allegations of child abuse were pending or under investigation, or due to an adjudication or finding of child abuse or sexual misconduct?

c. Have you ever had a license, professional license, or certificate suspended, surrendered, or revoked 1) while allegations of child abuse or sexual misconduct were pending or under investigation, or 2) due to an adjudication or finding of child abuse or sexual misconduct?

42. The Initial Disclosure Form defines "Child Abuse" as any conduct that falls under the purview and reporting requirements of P.L. 1971, c. 437 (N.J.S.A. 9:6-8.8 et seq.) and is directed toward or against a child or student, regardless of the age of the child or student.

43. The Initial Disclosure Form defines "Sexual Misconduct" as any verbal, nonverbal, written, or electronic communication, or any other act directed toward or with a student that is designed to establish a sexual relationship with the student, including a sexual invitation, dating or soliciting a date, engaging in sexual dialogue, making sexually suggestive comments, self-disclosure or physical exposure of a sexual erotic nature, and any other sexual, indecent or erotic contact with a student.

44. As a condition of employment under New Jersey law, Ms. Ridgeway was required to certify under penalty of law that her responses were true, correct, and complete.

45. Ms. Ridgeway truthfully answered "no" in response to each of the three questions on the Initial Disclosure Form.

46. Under New Jersey law, the NJ District was required to forward the Initial Disclosure Form to CCCS, which was required to answer the same three questions "to the best of their knowledge."

47. New Jersey law provides that a former employer that provides information or records in connection with the disclosure process shall be immune from civil and criminal liability unless it is knowingly false. N.J.S.A. 18A:6-7.11.

48. In the event that a former employer answers "Yes" to any of the questions on the Initial Disclosure Form, the NJ District had no further obligation to continue processing Ms. Ridgeway's employment application. If it received such a disclosure after she was hired, it had the absolute right to terminate her employment.

49. A hiring entity has the discretion under New Jersey law to continue with the Applicant's pre-employment processing even if the previous employer answers "Yes" to one of

the questions on the Disclosure, but only after requesting additional information from the previous employer, including "a copy of the initial complaint and the investigation report, if any, regarding the incident of child abuse or sexual misconduct."

50. Ms. Ridgeway received an offer of employment from the NJ District in August and started working as a Kindergarten teacher in September, 2019. She was also hired to coach high school varsity field hockey team.

**C. Defendants' Knowingly False Disclosures**

51. Taylor Cowan, "HR Administrator" for CSMI, completed and signed the Initial Disclosure Form pertaining to Ms. Ridgeway, which was then sent by facsimile to the NJ District on September 25, 2019.

52. The Initial Disclosure answers "Yes" to the first two questions on the Initial Disclosure Form, both of which were knowingly false, and which conveyed to the NJ District that Ms. Ridgeway was either investigated for or was no longer employed because of allegations of "abuse" and/or "sexual misconduct" involving a student or child.

53. The School Defendants knew that Ms. Ridgeway had never been accused of any sort of child abuse or other misconduct while she was employed by CCCS.

54. Ms. Ridgeway had never been the subject of any investigation by CCCS and/or CSMI to determine whether she had committed "abuse" or "sexual misconduct" involving a student or a child.

55. If there ever had been such an allegation, CCCS would have been required to report it to the Pennsylvania Department of Education (PDE).

56. CCCS would have been required to report to PDE even if abuse or sexual misconduct against a child was caused by Ms. Ridgeway's inaction.

57. CCCS never filed such a report and there was no basis upon which it could have or should have done so.

58. School Defendants knew that there was no pending investigation against Ms. Ridgeway for child abuse or sexual misconduct at the time of her separation from CCCS.

59. CCCS stated that it terminated Ms. Ridgeway's employment because she failed to provide proper supervision in her classroom, not because of an allegation or adjudication that she committed child abuse or sexual misconduct.

60. The Initial Disclosure Form the School Defendants' submitted to the NJ District constituted a false official report that conveyed to the NJ District that Ms. Ridgeway had been investigated for an allegation of "abuse" and/or "sexual misconduct" and that such investigation did not result in a finding that the allegations were false or unsubstantiated.

**D. Plaintiff's Discovery of Defendants' Defamatory Statements and the Ensuing Investigation by the NJ District**

61. Ms. Ridgeway first learned about the School Defendants' false responses on September 30, 2019 when she was summoned to the Superintendent's office in the NJ District and required to bring a union representative.

62. The Superintendent told Ms. Ridgeway that as a result of the Initial Disclosure, the NJ District might be required to terminate her employment.

63. After the Superintendent's second meeting with Ms. Ridgeway, she telephoned the School Defendants and asked for an explanation as to why they responded "Yes" to the first

two questions on the Initial Disclosure.

64. On October 1, 2019, the Superintendent sent a letter to Ms. Cowan at CSMI requesting additional information because the Initial Disclosure stating that Ms. Ridgeway had been "the subject of a child abuse or sexual misconduct investigation and she may have been disciplined and asked to resign due to the allegations or due to an adjudication or finding of child abuse or sexual misconduct."

65. The Superintendent asked Ms. Cowan to provide the initial complaint of abuse and the final investigation report within the next twenty days.

66. On October 9th the Superintendent office received a copy of the September 25th Disclosure with a one-paragraph attachment by Janelle Trigg alleging that she watched the video of Ms. Ridgeway's classroom and saw "several students under desks" and that although the "incident itself was hard to make out", it was "found to be factual."

67. She stated falsely that Ms. Ridgeway was aware that "the child did things to boys because "it happened on a school trip too."

68. Trigg was aware that Ms. Ridgeway did not learn about either of the incidents the Student said happened on May 16th until he reported both of them to her on May 21st.

69. There was no factual basis for Trigg's statement that Ms. Ridgeway had knowledge before the incident on the afternoon of May 16th that a similar one happened earlier that day, and her statement that Ms. Ridgeway did have such knowledge was deliberately false.

70. There was no factual basis for Trigg's statement that Ms. Ridgeway admitted knowing that "the child did things to boys", and her statement that Ms. Ridgeway did admit to such knowledge was deliberately false, as was the implication that she failed to protect any of her

children from a known risk of sexual exploitation by another child or children later that day.

71. What Ms. Ridgeway reported was that the Student said the female child had been coerced into performing sexual acts on the three boys during the picnic, and that they threatened to "kill her" if she refused.

72. Trigg falsely stated that Ms. Ridgeway "refused to sign any paperwork."

73. No paperwork was presented to Ms. Ridgeway during the May 22nd termination meeting for her to sign or to explain the basis for her dismissal.

74. The statements Trigg made in her May 22nd statement were knowingly false.

75. None of Trigg's statements on October 9th provided a factual basis for the false statements the School Defendants made on their Initial Disclosure that Ms. Ridgeway had been the subject of an investigation for child abuse, or that she had been terminated on the basis of any such investigation or while it as pending.

76. None of Trigg's statements provided a factual basis for the School Defendants' representations on the Initial Disclosure that not only had Ms. Ridgeway been the subject a child abuse or sexual misconduct investigation, but that she was not exonerated based on a finding that the charges were false or not substantiated.

77. The only "investigation" that the School Defendants conducted between May 21st, when Ms. Ridgeway learned about the May 16th incidents, and May 22nd when she was terminated, was to determine whether there had been inappropriate sexual interactions between the four identified children, and whether the female student had been coerced.

78. Ms. Ridgeway was not the subject of that investigation, and the investigation was completed by May 22nd.

79. Ms. Ridgeway was never accused of committing any act of abuse or sexual misconduct, and there was no investigation into whether she did so.

80. Had there been such an investigation, Defendants would have been obliged to provide her with notice of the charges and allowed her an opportunity to be interviewed and to present exculpatory evidence in her defense, including her incident report, because a finding against her would made her ineligible to work as a teacher anywhere in Pennsylvania and almost certainly in every other state.

82. On or about December 2, 2019, CCCS submitted a new disclosure in which it answered "No" to all three questions on the Disclosure, including the two questions to which it had answered “Yes” in the Initial Disclosure.

83. The December Disclosure confirms, under oath, that all of the statements to which Defendants answered in the affirmative on September 25th are untrue.

84. No one from CCCS or the NJ district told Ms. Ridgeway about the December disclosure.

85. In an E-mail to Plaintiff's attorney on January 8, 2020, counsel for CCCS insisted that all of the statements CCCS made on its Initial Disclosure were true even though the School Defendants made a sworn statement on December 2, 2019 that they were not true.

86. In her January 8th E-mail, CCCS's attorney did not reveal the Second Disclosure.

87. Ms. Ridgeway only found out about the December 2nd Disclosure when her attorney received records from the NJ District on September 14, 2020 after multiple requests, but without knowing about the existence of the Second Disclosure.

## V. CAUSES OF ACTION

### COUNT I: DEFAMATION AGAINST SCHOOL DEFENDANTS DISCLOSURE QUESTION 1

88. The allegations set forth in Paragraphs 1-87 are re-alleged and incorporated by reference herein.

89. The School Defendants, i.e, CCCS and/or CSMI on behalf of CCCS, stated falsely on the Initial Disclosure that Ms. Ridgeway was the subject of an investigation of child abuse or sexual misconduct knowing this was false.

90. The School Defendants stated that or implied that its investigation of allegations of child abuse or sexual misconduct against Ms. Ridgeway did not result in a finding that the allegations were false or not substantiated, knowing that this statement was both false and highly misleading, and portrayed Ms. Ridgeway as if the charges against her had been substantiated.

91. The School Defendants published the statements to the NJ District by facsimile on September 25, 2019 and they were received by the NJ district that day on 12:14 p.m.

92. The statements applied directly to Ms. Ridgeway and were in direct response to the NJ school district's request for information about her specifically in connection with her application for employment, and in no way could it have been intended to apply or relate to anyone else, or to be understood as relating to any other person.

93. The School Defendants knew that a "Yes" response to the first question on the Initial Disclosure would almost certainly result in her not obtaining or maintaining her employment in the NJ District because it would render her unfit to work as a teacher in any public school in New Jersey.

94. The School Defendants knew that the representations it made on its Disclosure would responses would, if believed, result in the loss of her license in Pennsylvania and preclude her from working not only there but in most other states.

95. The NJ District understood the statements to apply to Ms. Ridgeway personally and also understood the defamatory meaning of those statements.

96. The School Defendants' statement that Ms. Ridgeway was the subject of an allegation of child abuse and/or sexual misconduct falsely portrayed Ms. Ridgeway as having lied on her own NJ Disclosure application.

97. The NJ district understood the statement to apply to Ms. Ridgeway personally and directly, and confronted her specifically on that basis and thereafter set out to determine whether those statements were true and should disqualify her for employment and therefore require her termination.

98. The NJ District sought additional information from the School Defendants to determine the basis for statement in response to the first question and whether that information should be the basis for terminating Ms. Ridgeway's employment.

99. Alone or in combination with the second question on the Initial Disclosure, the statements by the School Defendants, jointly or severally, in response to the first question constituted defamation against Ms. Ridgeway pursuant to 42 Pa. Cons. Stat. § 8343(a).

100. The character of the statements made by the School Defendants impair Ms. Ridgeway's reputation and standing in the community both personally and professionally, as they portray her as having acted in a manner that is so heinous and violates all standards and norms of decency in our society, and also constitutes a serious crime, so as to cause others not to associate

with her either personally or professionally, and therefore constitute defamation *per se*.

101. As a result of CCCS's statement, Ms. Ridgeway has suffered actual harm, including personal humiliation, and mental anguish and suffering.

102. Ms. Ridgeway has no way of knowing whether in connection with any future application the Defendants would repeat the false statements it did made on its Initial Disclosure or make true statements like the ones on its Second Disclosure, but which Defendants' counsel either failed or refused to disclose to Plaintiff's Counsel.

103. Because of CCCS's defamatory conduct and the threat that it will re-publish its defamatory statements or make similar statements, Ms. Ridgeway is not at liberty to seek other employment opportunities that might provide her with additional pay or advancement opportunities, and has or will impair her professional and personal mobility.

**COUNT II: DEFAMATION AGAINST SCHOOL DEFENDANTS**

104. The allegations set forth in Paragraphs 1-103 are re-alleged and incorporated by reference herein.

105. The statement that Ms. Ridgeway was disciplined, discharged, or otherwise separated from her employment at CCCS while an investigation was underway to determine whether she abused a child or engaged in sexual misconduct was made by the School Defendants, i.e., either by CCCS, or its agent CSMI, acting on CCCS's behalf, and was knowingly false.

106. The School Defendants' response to the second question on the Initial Disclosure was made in direct response to the NJ school district's request for information about Ms. Ridgeway specifically, and its statement applied to her and in no way could have been or was

intended to apply or relate to anyone else.

107. The School Defendants' September 25, 2018 disclosure falsely portrayed Ms. Ridgeway as having engaged in or facilitated sexual abuse against children under her care and leaving her previous job under the cloud of a pending investigation for child abuse and sexual misconduct in a manner designed to deter others from associating with her personally and professionally.

108. The School Defendants' knew that a "Yes" response to the second question or the content of that response, if known, would likely prevent Ms. Ridgeway's from obtaining or keeping the job in the NJ District, and if known, would preclude her from obtaining any other teaching job.

109. The statement that she was disciplined, discharged, or otherwise separated from her employment at CCCS while an investigation was underway pertaining to an investigation as to whether she abused a child in her care portrayed Ms. Ridgeway as having lied on her own disclosure.

110. The NJ district understood the statement to apply to Ms. Ridgeway personally and directly, and confronted her specifically on that basis and thereafter set out to determine whether her statements were true or false, and whether she should be disqualified for employment and terminated on the basis of the statements by the School Defendants.

111. Alone or in combination with the first question on the Initial Disclosure, the School Defendants' response to the second question was defamatory on its face, and constituted defamation *per se* against Ms. Ridgeway pursuant to 42 Pa. Cons. Stat. § 8343(a).

112. As a result of CCCS's statement, Ms. Ridgeway has suffered actual harm, including personal humiliation, and mental anguish and suffering.

**COUNT III: DEFAMATION AGAINST JANELL TRIGG**

113. The allegations set forth in Paragraphs 1-112 are re-alleged and incorporated by reference herein.

114. The statements made by Ms. Trigg on her May 22, 2020 statement that Ms. Ridgeway knew that before the afternoon incident on May 16th that one or more students in her 2nd Grade classroom had been engaged in sexual conduct but failed to protect them from exploitation, were knowingly false and constituted defamation on their face.

115. The deliberate implication of Trigg's statement was that by her inaction in the face of a known risk, Ms. Ridgeway caused or allowed such exploitation to occur against one or more of her students, was knowingly false.

116. Ms. Trigg knew that this type of statement in relation to Ms. Ridgeway would so severely tarnish her personal reputation and impair her professional standing in the educational community that it would cause others not to associate with her.

117. Ms. Trigg knew that the School Defendants would understand her statements as applying to Ms. Ridgeway and to no one else, that they would understand their defamatory meaning, and that they would use those statements as a basis for her termination from her employment at CCCS.

116. Ms. Trigg sent her May 22nd statement to the NJ District or caused it to be sent in response to its request for additional information as to the basis for the School Defendants' false statements on the Initial Disclosure, and specifically to support of those statements which she

knew to be false.

119. Ms. Trigg knew that her statements, especially in conjunction with the School Defendants false statements on the Initial Disclosure, would very likely cause Ms. Ridgeway to lose her job, and she sent it with that specific intention.

120. Ms. Ridgeway did not obtain or know about Trigg's statement until her attorney received documents from the NJ School District on September 14, 2020.

121. As a result of Defendant Trigg's statements, alone or in conjunction with the School Defendants' statements on the Initial Disclosure, Ms. Ridgeway has suffered actual harm, including the loss of her job at CCCS, the threat of losing her job at the NJ District and all the ensuing personal humiliation, and mental anguish and suffering.

**WHEREFORE**, Ms. Ridgeway respectfully requests prays for the following relief:

1. A declaratory judgment that the School Defendants' statements on the Disclosure Form were knowingly false, and constituted defamation *per se.*

2. A declaratory judgment that Defendant Janell Trigg's statements constituted defamation.

3. Award the Plaintiff compensatory damages for the financial losses, emotional distress, humiliation and suffering she sustained as a result of the Defendants' joint and several defamatory statements.

4. Enter an injunction prohibiting the Defendants, jointly and severally, from ever repeating the defamatory statements they made on the Disclosure, either specifically or by way of implication. Specifically, Plaintiff asks the Court to order Defendants to answer "no" in response to any request by a prospective employer as to whether Ms. Ridgeway was ever 1) the "subject"

of any child abuse or sexual misconduct investigation;" 2) was disciplined, discharged, non-renewed, asked to resign from employment, resigned or otherwise separated from employment while allegations of child abuse were pending or under investigation, or due to an adjudication or finding of child abuse or sexual misconduct; and 3) had a license, professional license, or certificate suspended, surrendered, or revoked while allegations of child abuse or sexual misconduct were pending or under investigation, or due to an adjudication or finding of child abuse or sexual misconduct. Additionally, she asks the Court to prohibit any of the Defendants or their agents or representatives to ever state, imply, or suggest in any way that Ms. Ridgeway was ever accused of child abuse or sexual misconduct, directly or by way of action, inaction, or negligence that caused or allowed child abuse or sexual misconduct to occur while she was employed during the 2017-18 or 2018-19 school year.

5. Award Plaintiff and her counsel all costs and attorneys fees she has incurred or will incur in the prosecution of this action.

7. Award all other relief which may be just and proper under the circumstances.

Respectfully submitted,

**LORRIE McKINLEY, Esquire**
Attorney ID No. 41211

McKINLEY & RYAN, LLC
238 West Miner Street
West Chester, PA 19382
Telephone (610) 436-6060
Fax (610) 436-6804

September 30, 2020