# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CECILY RIDGEWAY,

    *Plaintiff,*

v.

CHESTER CHARTER COMMUNITY SCHOOL, et al.,

    *Defendants.*

CIVIL ACTION
NO. 20-4786

## **MEMORANDUM ORDER**

**AND NOW**, this 7th day of May 2021, upon consideration of Cecily Ridgeway's Motion for Default Judgment or Extension of Time for Service (ECF 22), Chester Charter Community School's Response (ECF 24) and information regarding Ridgeway's service on CCCS in the Amended Complaint (ECF 8) and Ridgeway's Response to CCCS's Motion to Dismiss (ECF 20), it is hereby **ORDERED** that:

1. Ridgeway's Motion is **DENIED** insofar as it seeks default judgment against CCCS because CCCS was never properly served. Her Motion is **GRANTED** insofar as it seeks an extension of time to serve CCCS.

2. Ridgeway's time for to effect proper service of process is **EXTENDED** to **Monday, June 7, 2021**. Ridgeway shall file proof of proper service on or before that date.

Ridgeway seeks default judgment against CCCS for its failure to appear until March 2, 2021 even though she purportedly served CCCS on November 20, 2020. *See*

1

(Pl.'s Mot. 3–6, ECF 22-1). She alternatively requests more time to serve CCCS if the Court finds her initial attempt was improper. (*Id.* at 6.)

Rule 55 of the Federal Rules of Civil Procedure governs the entry of default judgment. Under Rule 55(a), the Clerk of Court must enter a party's default if (1) the party has been properly served and (2) the served party has not timely responded. Fed. R. Civ. P. 55(a). After the Clerk has properly entered a default a court may, in its discretion, enter default judgment against a party. *See* Fed. R. Civ. P. 55(b)(2); *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990).

Here, Ridgeway filed a Praecipe for Default against CCCS pursuant to Rule 55(a) on March 1 (ECF 17). The Clerk, however, never entered a default against CCCS. For that reason alone, the Court cannot enter a default judgment. *Husain v. Casino Control Comm'n*, 265 F. App'x 130, 133 (3d Cir. 2008) ("[E]ntry of default judgment by the Clerk under Federal Rule of Civil Procedure 55(a) constitutes a general prerequisite for a subsequent default judgment under Rule 55(b).").

Even if the Clerk had entered a default against CCCS, default judgment would be improper because CCCS was never correctly served. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985) ("A default judgment entered when there has been no proper service of the complaint is, *a fortiori*, void, and should be set aside."). Where a defendant is a corporation, partnership or association, it may be served "in the manner prescribed by Rule 4(e)(1)," Fed. R. Civ. P. 4(h)(1)(A), which permits service by "following state law for serving a summons . . . in the state where the district court is located or where service is made," Fed. R. Civ. P. 4(e)(1). Pennsylvania allows corporations and similar entities to be served by "handing a copy to the

manager, clerk or other person for the time being in charge of any regular place of business or activity of the association." Pa. R. Civ. P. 424(2).

Ridgeway contends she served CCCS through "the person for the time being in charge" of CCCS's regular place of business or activity on November 20, 2020 in accordance with Pennsylvania Rule of Civil Procedure 424(2), but the facts she provides belie that argument. The Third Circuit has held a "person for the time being in charge" must "either be an individual with some direct connection to the party to be served or one whom the process server determines to be authorized, on the basis of her representation of authority as evidenced by the affidavit of service." *Grand Ent. Grp. Ltd. v. Star Media Sales*, 988 F.2d 476, 486 (3d Cir. 1993) (defining phrase with reference to Pennsylvania Rule of Civil Procedure 402); *see, e.g.*, *Grieb v. JNP Foods, Inc.* No. 15-1575, 2016 WL 8716262, at *3 (E.D. Pa. May 13, 2016) (applying *Grand Ent. Grp.* definition of "person for the time being in charge" to Pennsylvania Rule of Civil Procedure 424(2)). The person "should either derive or appear to derive authority from the party upon whom service is attempted." *Grand Ent. Grp.*, 988 F.2d at 486.

On November 20, professional process server Michael O'Neill attempted to serve CCCS on Ridgeway's behalf by delivering the Summons and Complaint to a woman who told him she worked for CSMI, a separate defendant in this case and an entity independent from CCCS. (CCCS Proof of Service, ECF 2.) He served the woman at CSMI's principal place of business, which is different from CCCS's business location.[1]

---

[1] Ridgeway suggests the Court should conclude CSMI headquarters is CCCS's regular place of business or activity because "all of CCC's business activities" are conducted there. (Pl.'s Mot. 4.) While it is not clear this is true, even accepting this assertion Ridgeway fails to cite any law supporting the idea that CSMI headquarters could be considered CCCS's "regular place of business or activity" given that CCCS, a school, runs at least its academic operations without CSMI and at a different location.

*See* (*id.*); (Am. Compl. ¶¶ 4, 6, ECF 8). He knew CCCS and CSMI had different business locations because Ridgeway's counsel told him that one day earlier. *See* (Resp. to CCCS Mot. to Dismiss, McKinley Decl. A-1–A-2, ECF 20); *see, e.g.*, *Grieb*, 2016 WL 8716262, at *4 ("Here, not only was Wadja not an employee of JNP Foods, he was not even served at a restaurant owned by JNP Foods. Again, we find the process server could not have reasonably believed that Wadja was authorized to accept service on behalf of JNP Foods, given that she knowingly delivered the papers at what she knew to be the wrong location.").

O'Neill says the woman represented she was authorized to accept service for CCCS, but she told him that authorization came from *another CSMI employee*. *See* (Resp. to CCCS Mot. to Dismiss, McKinley Decl. ¶ 7, A-1). She did not say, and O'Neill had no reason to believe, that anyone at CCCS empowered her or CSMI generally to accept service for it.[2] The facts show that on November 20 O'Neill knew or reasonably should have known that he was not serving the right place or person to notify CCCS about Ridgeway's lawsuit.[3] Ridgeway bears the burden of showing she properly served

---

[2]  Ridgeway alleges CCCS and CSMI have a contractual relationship wherein CSMI handles CCCS's "non-academic school management functions" such as human resources management, (Am. Compl. ¶ 8), but she has not presented any facts showing that this relationship authorizes CSMI to accept service on CCCS's behalf. Moreover, nothing indicates O'Neill was ever told the nature of CCCS and CSMI's relationship allowed CSMI to accept service for CCCS or that he was operating under this assumption on November 20.

[3]  Ridgeway asks the Court to assume valid service on CCCS because "it is implausible to think that [the CSMI employee] was careful enough to check with [a CSMI Senior Vice President] before accepting it, but then failed to forward it appropriately to ensure CCCS received it . . . . Likewise, it is not possible to imagine, nor is there any evidence, that someone else at CSMI withheld the package from CCCS." (Pl.'s Mot. 4.) While CCCS eventually became aware of this lawsuit, the Court has no basis to conclude it had actual notice of it within ninety days of when Ridgeway filed the Complaint. In any event, "although it is true that one of the purposes of the rules regarding service of process is to provide notice . . . 'notice cannot by itself validate an otherwise defective service.'" *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 568 (3d Cir. 1996) (quoting *Grand Ent. Grp.*, 988 F.2d at 492); *see also Alloway v. Wain-Roy Corp.*, 52 F.R.D. 203, 205 (E.D. Pa. 1971)

4

CCCS, *see, e.g.*, *McKinnis v. Hartford Life*, 217 F.R.D. 359, 361 (E.D. Pa. 2003), and she has not met that burden.

Ridgeway contends that if the Court concludes she never properly served CCCS it should extend her time for service by finding "good cause for [her] failure," but the Court cannot so find. A showing of good cause for failure to serve "requires a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995). Neither "reliance upon a third party or on a process server" nor delay resulting from "inadvertence of counsel" constitutes good cause for failure to timely serve. *See Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1307 (3d Cir. 1995); *Braxton v. United States*, 817 F.2d 238, 242 (3d Cir. 1987). Ridgeway's counsel submitted a Declaration saying she believed O'Neill served CCCS in accordance with the Federal Rules of Civil Procedure, and this mistaken belief seems to be the reason CCCS was not served properly in this case. *See* (Resp. to CCCS Mot. to Dismiss, McKinley Decl. ¶ 7); *Gonzalez v. Thomas Built Buses, Inc.*, 268 F.R.D. 521, 526 (M.D. Pa. 2010) ("While it appears that plaintiffs believed that they had properly served the defendants, ignorance of the law does not rise to the level of exhibiting a reasonable basis for their noncompliance with the service requirements of Rule 4.").

The Court nonetheless exercises its discretion to extend Ridgeway's time to serve CCCS. *See Petrucelli*, 46 F.3d at 1305 (finding a district court may use discretion to extend time for service if good cause is not shown). The Court may consider factors

---

("Where the person served is not an agent on whom proper service could be made, the fact that he may have advised the proper corporate official of the complaint is irrelevant.").

such as any prejudice to the defendant that would result from an extension, whether the defendant had actual notice of the action and whether the statute of limitations would bar a refiled action in granting an extension notwithstanding the absence of good cause. *See id.* at 1305–06 (citation omitted); *Chiang v. United States SBA*, 331 F. App'x 113, 116 (3d Cir. 2009) (citing Fed. R. Civ. P. 4(m) Advisory Committee note (1993); *Boley, v. Kaymark*, 123 F.3d 756, 759 (3d Cir. 1997)); *Sanders-Darigo v. CareersUSA*, 847 F. Supp. 2d 778, 784 (E.D. Pa. 2012). CCCS acknowledges it will not be prejudiced by an extension because it states twice in its Response that it does not object to granting one to Ridgeway. *See* (Resp. to Pl.'s Mot. 2, 10, ECF 24). It has had actual notice of this case and the allegations against it for a minimum of two months because it filed a Motion to Dismiss on March 2. Additionally, Ridgeway represents that without an extension she will be foreclosed from prosecuting her defamation claim because the statute of limitations will have run. (Pl.'s Mot. 5.)[4]

BY THE COURT:

 */s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[4] CCCS believes the statute of limitations has already run on Ridgeway's defamation claim. *See* (Resp. to Pl.'s Mot. 7). The Court can take up that issue when it considers Defendants' Motions to dismiss.