IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CECILY RIDGEWAY,<br><br>   *Plaintiff,*<br><br>v.<br><br>CHESTER CHARTER COMMUNITY SCHOOL., et al.,<br><br>   *Defendants.* | CIVIL ACTION<br>NO. 20-4786 |

**PAPPERT, J.**                                 October 29, 2021

**MEMORANDUM**

  Cecily Ridgeway sued the school where she worked as a second-grade teacher, its human resources management company and the company's assistant human resources administrator under Title IX and state law for firing and defaming her. She alleges the firing was unlawful retaliation for reporting student-on-student sexual misconduct and that the school, management company and administrator knowingly made false statements harmful to her reputation and teaching career. Defendants filed two separate Motions to dismiss, claiming Ridgeway's Amended Complaint fails to state a claim under Title IX and that her defamation claims are time-barred under New Jersey law. After reviewing the parties' filings and holding oral argument, the Court denies both Motions.

I

A

  Ridgeway taught second grade during the 2018-19 academic year at Chester Charter Community School in Chester, Pennsylvania. (Am. Compl. ¶¶ 4, 16, ECF 8.) On May 21, 2019, a student told Ridgeway that three male classmates forced a female

1

student to perform sexual acts during a May 16 field trip and picnic. (*Id.* at ¶ 17.) The student also reported that another incident involving the same four students took place in the classroom at dismissal the same day. (*Id.* at ¶ 18.) Ridgeway knew about neither incident before the student told her about them five days later. (*Id.* at ¶ 24.) She immediately contacted Chester Charter's dean for guidance and wrote a report about the two incidents. (*Id.* at ¶¶ 25, 29.) She also called Chester Charter's principal, Ms. Burch,[1] late that afternoon to discuss the report but Burch told her to keep it until the next day. (*Id.* at ¶ 30).

The next day, May 22, Burch told Ridgeway that the female student's mother planned to take legal action against the school. (*Id.* at ¶¶ 31–32.) Ridgeway was summoned to Chester Charter's human resources department for a meeting with Burch and Janelle Trigg. (*Id.* at ¶ 33.) Trigg is an assistant HR administrator for CSMI, the company that manages Chester Charter's human resources, including the processing of firing and disciplinary determinations. (*Id.* at ¶¶ 9–10.)

Trigg and Burch told Ridgeway that Chester Charter's CEO, Dr. David Clark, decided to fire Ridgeway for inadequately supervising her students. (*Id.* at ¶ 35.) Clark had not previously spoken to Ridgeway about the incidents. (*Id.* at ¶ 36.) Nor had he, Burch or Trigg read her incident report. (*Id.* at ¶¶ 36, 38.) As far as Ridgeway knew, none of them had interviewed the student who reported the incidents to her. (*Id.* at ¶ 37.) Clark wrote a letter terminating Ridgeway and stating Chester Charter had "completed the investigation." (*Id.* at ¶ 49.) But he never told Ridgeway she was the subject of an investigation, completed a report on it or provided Ridgeway with any procedural

---

[1] Principal Burch's first name is not stated in Ridgeway's Amended Complaint or the Motion papers.

protections. (*Id.* at ¶¶ 50–51.)

Trigg wrote a statement to Chester Charter and CSMI after the May 22 meeting in which she said that Ridgeway admitted she knew about the first of the two May 16 incidents before the second one occurred. (*Id.* at ¶¶ 44–46.) Trigg did this even though Ridgeway told Trigg she first learned about both incidents when the student reported them to her on May 21. (*Id.* at ¶¶ 47–48.)

B

Ridgeway, a New Jersey resident, subsequently applied for teaching jobs in that state. (*Id.* at ¶¶ 3, 52.) She consented to schools contacting Chester Charter for more information. (*Id.* at ¶ 52.) The lone New Jersey school[2] that responded to Ridgeway's application required her to complete a form containing the following three questions:

   a. Have you been the subject of any child abuse or sexual misconduct investigation by any employer, State licensing agency, law enforcement agency, or the Department of Children and Families (*unless the investigation resulted in a finding that the allegations were false or unsubstantiated)?

   b. Have you been disciplined, discharged, non-renewed, asked to resign from employment, resigned or otherwise separated from employment while allegations of child abuse were pending or under investigation, or due to an adjudication or finding of child abuse or sexual misconduct?

   c. Have you ever had a license, professional license, or certificate suspended, surrendered, or revoked 1) while allegations of child abuse or sexual misconduct were pending or under investigation, or 2) due to an adjudication or finding of child abuse or sexual misconduct?

(*Id.* at ¶¶ 53–54.) Ridgeway answered no to each question. (*Id.* at ¶ 55.) The school sent the same form to Chester Charter requiring it to answer the three questions "to the best of [its] knowledge." (*Id.* at ¶¶ 56–57.) Chester Charter's response, which was signed by a CSMI HR Administrator (other than Trigg), answered yes to questions a and

---

[2] The Amended Complaint states the school is located in "NJ District" but does not name the district or school.

b, even though Chester Charter and CSMI knew Ridgeway had never been the subject of a child abuse or sexual misconduct investigation. (*Id.* at ¶¶ 63, 65.) Chester Charter returned the form to the New Jersey school on September 25, 2019. (*Id.* at ¶ 61.) Ridgeway began teaching kindergarten in New Jersey the same month. (*Id.* at ¶ 62.) She knew nothing of Chester Charter's response until September 30, when she was summoned to the district superintendent's office. (*Id.* at ¶ 71.)

The superintendent subsequently contacted Chester Charter and CSMI for more information. (*Id.* at ¶¶ 73–75.) CSMI responded on October 9 by sending the response form with the same answers as well as Trigg's May 22 statement. (*Id.* at ¶ 76.) Ridgeway did not learn of this correspondence until September 14, 2020, after her lawyer requested hiring and disclosure documents from the New Jersey school. (*Id.* at ¶ 81; Am. Resp. to CSMI & Trigg's Mot. to Dismiss 14–15.) On December 2, Chester Charter sent an updated response form to Ridgeway's employer in New Jersey, this time answering no to all three questions. (Am. Compl. at ¶ 79.) The next month, Chester Charter's attorney stated in an email to Ridgeway's lawyer that the initial answers were true. (*Id.* at ¶ 82.)

Ridgeway sued Chester Charter, CSMI and Trigg alleging violations of Title IX and state law. She claims Chester Charter and CSMI retaliated against her in violation of Title IX by firing her in May of 2019 and then making statements harmful to her reputation and career. *See* (*id.* at ¶¶ 84–102). She also alleges Chester Charter and CSMI defamed her by knowingly providing two false answers on the response form and that Trigg defamed her by knowingly making a false statement about when Ridgeway learned of the first of the two May 16 incidents of student-on-student sexual misconduct. *See* (*id.* at ¶¶ 103–29). Ridgeway seeks declaratory, monetary and injunctive relief. *See*

4

(*id.* at 21–22).[3] CSMI and Trigg moved to dismiss her Amended Complaint for failure to state a claim, and Chester Charter filed its own Motion adopting CSMI and Trigg's arguments for Ridgeway's three claims against it. (ECF 11, 19.)[4] She separately responded to each Motion. (ECF 16, 20.)

## II

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When a complaint includes well-pleaded factual allegations, a court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016)

---

[3] Page numbers in this Memorandum correspond to the ECF pagination, with the exception of Ridgeway's Amended Response, for which there are no ECF page numbers.

[4] Chester Charter claimed it was not properly served with either Ridgeway's initial or Amended Complaint but that it was filing its Motion to preserve its defenses against Ridgeway's claims. (Chester Charter's Mot. to Dismiss at 4.) Ridgeway responded that Chester Charter's Motion was untimely given Ridgeway had properly effected service several months before Chester Charter entered an appearance. *See* (Resp. to Chester Charter's Mot. to Dismiss at 2–7). She also moved against Chester Charter on that basis for default judgment or a time extension for service. *See* (ECF 22-1 at 3–4). The Court denied Ridgeway's motion with respect to default judgment, finding the clerk had not entered default and that service was improper in any event, but exercised its discretion to grant the motion as to the service extension notwithstanding the lack of good cause for improper service. *See* (Mem. Order, ECF 25). Ridgeway then timely obtained a service waiver from Chester Charter. (ECF 27.)

(quoting *Iqbal*, 556 U.S. at 679). But this "presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

District Courts in the Third Circuit can grant a motion to dismiss based on an affirmative defense, such as a statute of limitations, if its predicate is "apparent *from the face of the complaint*.'" *Brody v. Hankin*, 145 F. App'x 768, 771 (3d Cir. 2005) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978) (emphasis in original)); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract."). A defendant bears the burdens of production and persuasion for an affirmative defense. *See Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 566 (3d Cir. 2003).

### III
### A

Title IX of the Education Amendments of 1972 provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Retaliation against an employee for complaining about sex discrimination is intentional sex-based discrimination that violates Title IX. *Doe v.*

6

*Mercy Cath. Med. Ctr.*, 850 F.3d 545, 563–64 (3d Cir. 2017); *see also Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005) (explaining that retaliation is an "intentional act" that constitutes discrimination since it subjects the complainant to "differential treatment"). Accordingly, Title IX's inferred private right of action extends to retaliation claims. *See Mercy Cath. Med. Ctr.*, 850 F.3d at 563–64.

These claims can be brought by an employee who complains about sex discrimination even if she was not a victim of it. *See Jackson*, 544 U.S. at 179 (stating that Title IX is a "broadly worded" statute that "does not require that the victim of the retaliation must also be the victim of the discrimination that is the subject of the original complaint"); *see also Mercy Cath. Med. Ctr.*, 850 F.3d at 563 (noting that *Jackson*, the Supreme Court case recognizing Title IX retaliation claims, "repeatedly underscores Title IX's wide range"). Title IX retaliation claims are governed by Title VII standards. *Mercy Cath. Med. Ctr.*, 850 F.3d at 564. To state a prima facie case for retaliation under Title IX, the complainant must demonstrate she engaged in protected activity, suffered an adverse action and a causal connection between them. *Id.* On a motion to dismiss, the plaintiff must "plead facts that would establish the ultimate elements of her claim" and need not "establish a prima facie case." *Du Bois v. Bd. of Regents of Univ. of Minn.*, 439 F. Supp. 3d 1128, 1135 (D. Minn. 2020).

Defendants claim Ridgeway failed to plead facts that establish two elements of her Title IX retaliation claims against Chester Charter and CSMI: that she engaged in protected activity and that CSMI took adverse action against her. (CSMI & Trigg's Mot. to Dismiss 15–17.) The Court disagrees.

B

1

Defendants argue Ridgeway failed to allege she engaged in protected activity because she never complained about unlawful discrimination on the part of Chester Charter or CSMI, or protested discriminatory practices that violate Title IX. *See* (*id.* at 15–16). Ridgeway contends she engaged in protected activity because she reported the student's account of two incidents of sexual misconduct. *See* (Am. Compl. ¶¶ 92–93). She claims it does not matter that her report did not oppose specific actions Chester Charter or CSMI undertook in violation of Title IX, that they knew the report implicated the statute and that this potential liability is why they fired her the next day. *See* (Am. Resp. to CSMI & Trigg's Mot. to Dismiss 6, 8).

Complaining about sex discrimination to a "funding recipient"[5] constitutes protected activity. *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 374 (W.D. Pa. 2008) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Formal or informal complaints can qualify as protected activity, meaning there is no need for "explicit opposition" to sex discrimination. *See Doe v. Manor Coll.*, 479 F. Supp. 3d 151, 169 (E.D. Pa. 2020) (citing *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)). Further, plaintiffs must only "show a 'good faith, reasonable belief'" of unlawful discrimination and are not required to "prove the merits of the underlying discrimination complaint." *Dawn L.*, 586 F. Supp. 2d at 374 (quoting *Moore v. City of Phila.*, 461 F.3d 331, 344 (3d Cir. 2006)); *see also, e.g.*, *Doe v. Univ. of Chicago*, No. 16-8298, 2017 WL 4163960, at *9 (N.D. Ill. Sept. 20, 2017) (retaliation claim

---

[5] Ridgeway alleges both Chester Charter and CSMI are recipients of federal funds covered by Title IX. (Am. Compl. ¶¶ 5, 7.)

survived motion to dismiss even though the conduct plaintiff complained of was not "sexual harassment under Title IX" because the complaint was based on a good faith belief it was conduct the statute forbids). The underlying "wrong" a Title IX retaliation claim targets is "differential treatment of a complaint," irrespective whether it proves meritorious. *Univ. of Chicago*, 2017 WL 4163960, at \*9.

A "student's report of sexual harassment or assault to school administrators" is protected activity. *Doe 1 v. Howard Univ.*, 396 F. Supp. 3d 126, 144 (D.D.C. 2019); *see, e.g.*, *Doe v. Sarah Lawrence Coll.*, 453 F. Supp. 3d 653, 668 (S.D.N.Y. 2020) (student's report that she was sexually assaulted by a fellow student sufficed as protected activity for a Title IX retaliation claim). A proper plaintiff for a retaliation claim is one "who oppose[s] discrimination against others." *Jackson*, 544 U.S. at 180–81 (explaining that reporting discrimination is "integral to Title IX enforcement" and that the statute's enforcement scheme "would unravel" were retaliation permitted because potential reporters would be hesitant to come forward, risking there being no remedy for the discrimination).

Teachers are often best positioned to vindicate their students' Title IX rights because of their capacity to identify and report discrimination to school officials. *Id.* at 181. The Supreme Court noted in *Jackson* that if a teacher complains to the school about a principal's sexual harassment of a student and the school is indifferent, the school likely would face Title IX liability for that indifference. *Id.* at 180 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) (recognizing deliberate indifference claims for teacher-student sexual harassment)); *see also Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 641–43 (1999) (extending *Gebser* to such claims for student-student sexual harassment). But if Title IX did not forbid retaliation, the teacher "would have no

recourse" were she fired for complaining. *Jackson*, 544 U.S. at 180. Absent such protection, those aware of discrimination "would likely not report it, indifference claims would be short circuited, and the underlying discrimination would go unremedied." *Id.*

Ridgeway has plausibly alleged she engaged in protected activity under Title IX. She was in the best position to vindicate the female student-victim's Title IX rights after another student told Ridgeway that three male classmates forced the female student to perform sexual acts. *See id.* at 181. Ridgeway alleges she promptly reported the two incidents to Chester Charter's dean. (Am. Compl. ¶¶ 17–18, 25.) She claims she also wrote a report about them and called the principal to discuss it. (*Id.* at ¶¶ 29–30.) To engage in protected activity, Ridgeway needed only a "good faith, reasonable" belief that her report could give rise to a Title IX violation for sex discrimination. *Dawn L.*, 586 F. Supp. 2d at 374. She plausibly alleges she had such a belief. Ridgeway claims the sexual misconduct she reported was "so severe and pervasive that it deprived the female student of an equal educational opportunity on the basis of her sex." (Am. Compl. ¶ 96.); *see also* 20 U.S.C. § 1681(a).

That Ridgeway never had the chance to submit her written report to the Chester Charter and CSMI officials who fired her is irrelevant for purposes of determining whether she engaged in protected activity. There was no need for Ridgeway to submit a formal complaint. *See Manor Coll.*, 479 F. Supp. 3d at 169. She claims she brought the student's account of two incidents of sexual misconduct to the attention of Chester Charter officials the day she learned of it. (Am. Compl. ¶¶ 25, 30.) Ridgeway sufficiently alleges she engaged in protected activity because she "oppose[d] discrimination against [an]other[]" when she reported that sexual misconduct. *Jackson*, 544 U.S. at 180.

At oral argument, Chester Charter claimed Ridgeway could not have engaged in

protected activity under the "manager rule" discussed in *Atkinson v. Lafayette Coll.*, 653 F. Supp. 2d 581, 596–600 (E.D. Pa. 2009). As *Atkinson* articulated the rule, rooted in the FLSA context, a complaint an employee makes "within the scope of" her job cannot be protected activity for a retaliation claim. *Id.* at 596 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421–24 (2006)). Chester Charter argued this rule precluded Ridgeway from engaging in protected activity because she was required to report the two incidents of student-on-student sexual misconduct. By logical extension, this would mean that any teacher who complains about any sexual harassment involving a student pursuant to an obligatory school policy would be stripped of Title IX protection. That is not the law. *See Jackson*, 544 U.S. at 180–81.

2

CSMI concedes Ridgeway's termination was an adverse action within the meaning of Title IX but argues she did not allege CSMI itself took any adverse action against her and that it cannot be held vicariously liable for Chester Charter's conduct. (CSMI & Trigg's Mot. to Dismiss 16–17.) Ridgeway alleges CSMI was "integrally involved" in what happened to her and, in fact, was the "sole actor or driving force" for much of it. (Am. Compl. ¶ 102; Am. Resp. to CSMI & Trigg's Mot. to Dismiss 10.)

Ridgeway sufficiently alleges CSMI and Trigg were involved in her firing and the defamatory statements. For example, Ridgeway claims Trigg submitted an allegedly defamatory statement to Chester Charter and CSMI in support of the decision to fire Ridgeway and that a (different) CSMI HR administrator signed the allegedly defamatory response form. (Am. Compl. ¶¶ 44–46, 63.) These allegations show that CSMI and its employees participated in, if not precipitated, the adverse action taken against her.

IV

A

1

Deciding whether any of Ridgeway's defamation claims are time-barred first requires a choice of law analysis. Defendants argue New Jersey law, which has a one-year statute of limitations and no discovery rule, should apply rather than Pennsylvania law, which has a discovery rule. *See* (CSMI & Trigg's Mot. to Dismiss 10–14). They identify only one "defamatory statement" and assert Ridgeway failed to sue within a year of its publication as required under New Jersey law. (*Id.* at 14.) Ridgeway argues there were three other defamatory "publications," that Pennsylvania law governs her claims for all of them but that, in any event, her claims for two of them satisfy even New Jersey's statute of limitations. *See* (Am. Resp. to CSMI & Trigg's Mot. to Dismiss 11–24).

Because the Court has supplemental jurisdiction over Ridgeway's defamation claims, it must apply the forum state's choice of law rules. *See Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Pennsylvania's choice of law analysis involves a two-part inquiry. First, "[b]efore a choice of law question arises, there must actually be a conflict between the potentially applicable bodies of law." *See On Air Entm't Corp. v. Nat'l Indemn. Co.*, 210 F.3d 146, 149 (3d. Cir. 2000). If there is an actual conflict, meaning there are "relevant differences" between the laws, the court then moves to part two of the inquiry and classifies the conflict as "true," "false," or "unprovided-for." *Hammersmith*, 480 F.3d at 230, 232.

Pennsylvania law requires defamation claims to be filed within a year after the allegedly defamatory statement was published, but it recognizes a "discovery rule" that tolls the statute of limitations when the claimant is unable "despite the exercise of

12

reasonable diligence, to know" she has been defamed. *Wolk v. Olson*, 730 F. Supp. 2d 376, 377 (E.D. Pa. 2010) (citing PA. Stat. and Cons. Stat. § 5523(1) (West 2021) and *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005)). By contrast, New Jersey law has no discovery rule, and defamation claims must be filed within a year of the statement's publication, without exception. *See Nuwave Inv. Corp. v. Hyman Beck & Co., Inc.*, 114 A.3d 738, 741 (N.J. 2015) (per curiam) (citing N.J. Stat. Ann. § 2A:14-3 (West 2021)).

Choice of law is irrelevant with respect to claims pertaining to two of the statements because they were timely even under New Jersey's one-year statute of limitations: the October 9, 2019 republication of Trigg's statement and the response-form answers. *See* (Am. Compl. ¶ 76); *Hammersmith*, 480 F.3d at 229–30 (explaining that choice of law analysis is unnecessary if the result would be the same applying either jurisdiction's laws). These claims were timely since she filed her initial complaint on September 30, 2020. (ECF 1.) This means the Court can refer "interchangeably" to Pennsylvania and New Jersey law for them. *Lucker Mfg., A Unit of Amclyde Engineered Prods., Inc. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994).

Choice of law is relevant with respect to claims pertaining to the other two allegedly defamatory statements—the September 25, 2019 initial publication of the form answers, which Ridgeway discovered on September 30, 2019; and the May 22, 2019 initial publication of Trigg's statement, which Ridgeway discovered on September 14, 2020. *See* (Am. Compl ¶¶ 44, 61, 71, 81). There are "relevant differences" between Pennsylvania and New Jersey law for these claims. *Hammersmith*, 480 F.3d at 230. Ridgeway filed her lawsuit more than a year after their publication, making them untimely under New Jersey law. *See Nuwave Inv. Corp.*, 114 A.3d at 741. Under Pennsylvania law, however, the discovery rule would apply, and her lawsuit, brought within one year of discovering

13

them, is timely. *See Wolk*, 730 F. Supp. 2d at 377.

2

Because there are relevant differences between Pennsylvania and New Jersey law with respect to Ridgeway's defamation claims pertaining to two of the statements, there is an "actual" conflict. *See Hammersmith*, 480 F.3d at 231. The question then becomes, at step two of Pennsylvania's choice of law inquiry, whether the conflict is "true," "false" or "unprovided-for." *Id.* at 230. A true conflict arises when both jurisdictions' governmental interests "would be impaired if their law were not applied." *Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 220 (3d Cir. 2005) (quoting *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170 187, n.15 (3d Cir. 1991)). If there is a true conflict, courts must apply the law of the jurisdiction with the "most significant contacts or relationships with the particular issue." *Id.* (quoting *In re Est. of Agostini*, 457 A.2d 861, 871 (Pa. Super. Ct. 1983)). A false conflict occurs "if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Id.* (quoting *Lacey*, 932 F.2d at 187). For false conflicts, courts apply the "only interested jurisdiction['s]" law. *Id.*[6] Classifying an actual conflict thus requires analyzing the policy interests animating each jurisdiction's law. *Hammersmith*, 480 F.3d at 230.

This case presents a false conflict because Pennsylvania's interests would be impaired by the application of New Jersey law but the reverse is not true. *See Garcia*, 421 F.3d at 220. Defendants identify only one interest New Jersey has in the application of its law: protecting its citizens, including Ridgeway. (CSMI & Trigg's Mot. to Dismiss 12.) The Supreme Court of New Jersey has likewise noted the interest in a person's right

---

[6] In an unprovided-for conflict, "*neither* state's interests would be impaired if its laws were not applied." *Hammersmith*, 480 F.3d at 230 n.9 (emphasis in original).

14

"to enjoy one's reputation free from unjustified smears and aspersions" and described defamation as a "remedy for those who 'abuse[d]' the right to speak and write freely." *Senna v. Florimont*, 958 A.2d 427, 433–34 (N.J. 2008) (quoting *Neafie v. Hoboken Printing & Publ'g Co.*, 68 A. 146, 148 (N.J. 1907)); *see Ward v. Zelikovsky*, 643 A.2d 972, 978 (N.J. 1994) (explaining that defamation law "exists to achieve the proper balance between protecting reputation and protecting free speech").[7] Ridgeway also identifies multiple interests New Jersey and Pennsylvania share, including protecting teachers from false accusations by prior, out-of-state employers and ensuring court access for teachers harmed by them. *See* (Am. Resp. to CSMI & Trigg's Mot. to Dismiss 19–20).

Pennsylvania's policy interests are similar to New Jersey's. In Pennsylvania, the primary function of a defamation cause of action is giving the "innocent and injured plaintiff a public vindication of his good name," and its primary purpose is restoring the plaintiff's "unjustly tarnished reputation." *Gaetano v. Sharon Herald Co.*, 231 A.2d 753, 755 (Pa. 1967); *Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa.*, 923 A.2d 389, 395 (Pa. 2007) (explaining that "reputational interests occupy an elevated position within [the Pennsylvania] state Constitution's system of safeguards"). Ridgeway highlights several of Pennsylvania's interests, among them protecting the reputations of noncitizens who work in the state and barring in-state employers from defaming their employees. (Am. Resp. to CSMI & Trigg's Mot. to Dismiss 18–20.) As for the discovery rule in particular, its purpose is tolling the statute of limitations during the period in which an injured party is "reasonably unaware" of the injury, so "he has essentially the same rights" as a party who

---

[7] Whatever interest New Jersey might have in applying its "strictly construed" one-year statute of limitations is significantly diminished in this case, in which the alleged defamers are either located (Chester Charter and CSMI) or work (Trigg) in a different state. *See Miele v. Rosenblum*, 603 A.2d 43, 45 (N.J. Super. Ct. App. Div. 1991).

suffered an "immediately ascertainable injury." *Fine*, 870 A.2d at 858.

None of New Jersey's policy interests would be impaired by applying Pennsylvania law. *See Garcia*, 421 F.3d at 220. Rather, applying Pennsylvania law would advance New Jersey's interests and applying New Jersey law would disserve them. But Pennsylvania's interests would be impaired by applying New Jersey law. *See id.*

New Jersey's interests would not be impaired by applying Pennsylvania law because Ridgeway's defamation claims for the initial publication of Trigg's statement and the form answers are timely if Pennsylvania's discovery rule applies: she sued within a year of discovering these statements. *See Wolk*, 730 F. Supp. at 377. Allowing Ridgeway to pursue these claims would provide legal protection for a citizen—the only policy interest New Jersey has in applying its law, according to Defendants. (CSMI & Trigg's Mot. to Dismiss 12.) By contrast, Pennsylvania's interests would be impaired by applying New Jersey law because Ridgeway's claims are time-barred without a discovery rule. *See Nuwave Inv. Corp.*, 114 A.3d at 741. Such a result would impair Pennsylvania's interests in vindicating the tarnished reputation of people working here. *See Gaetano*, 231 A.2d at 755.

Because there is a false conflict, the Court will apply Pennsylvania law, including its discovery rule, to Ridgeway's defamation claims for the initial publication of Trigg's statement and the form answers. *See Hammersmith*, 480 F.3d at 229–30.

B

To establish a prima facie defamation case under Pennsylvania law, plaintiffs must prove the statement's (1) "defamatory character," (2) "publication by the defendant," (3) "application to the plaintiff," (4) "understanding by the recipient of its defamatory meaning" and (5) "understanding by the recipient of it as intended to be applied to the

plaintiff." 42 PA. Stat. and Cons. Stat. § 8343(a) (West 2021).[8]

Ridgeway plausibly alleges the elements necessary to state a prima facie case. The statements made by CSMI, Chester Charter and Trigg have a defamatory character because they could have the effect of tarnishing Ridgeway's reputation as a teacher. *See Tucker v. Phila. Daily News*, 848 A.2d 113, 124 (Pa. 2004) (explaining that the defamatory-character element turns on "whether the statement 'tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third parties from associating or dealing with him'" (quoting *Birl v. Phila. Elec. Co.*, 167 A.2d 472, 475 (Pa. 1960)). The statements also were "published or communicated to a third person" since they were communicated to third parties at Chester Charter, CSMI or the New Jersey school. *See Elia v. Erie Ins. Exch.*, 634 A.2d 657, 660 (Pa. Super. Ct. 1993). Moreover, the statements satisfy elements three through five because Ridgeway is their obvious object and their defamatory meaning is plain.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.

---

[8] The statute also lists "[s]pecial harm resulting to the plaintiff from its publication" and "[a]buse of a conditionally privileged occasion" as elements plaintiffs must prove "when the issue is properly raised." *Id.* But given the likelihood the alleged statements will hinder Ridgeway's teaching career, the former is not relevant because the statements amount to "slander *per se*," so Ridgeway need not prove special damages. *See Walker v. Grand Cent. Sanitation, Inc.*, 634 A.2d 237, 242 (Pa. Super. Ct. 1993) (describing as a type of slander *per se* a statement that "imputes to another conduct, characteristics, or a condition that would adversely affect her in her lawful business or trade"). The latter becomes relevant, if at all, if the defendant shows the statement was privileged after the plaintiff states a prima facie case. *See* § 8343(b)(2); *Castellani v. Scranton Times, L.P.*, 124 A.3d 1229, 1241 (Pa. 2015).